UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.V. NAGLE & ASSOCIATES, INC.,

          Plaintiff,

v.

TUBULAR STEEL, INC., et al.,

          Defendants.

Case No. 2:19-cv-11399

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION [37]
AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION [35]**

After a decades-long business relationship soured, Plaintiff sued Defendants for breach of an oral contract and violation of Michigan's Sales Representatives Commission Act. ECF 32. Plaintiff also sought a declaratory judgment on the parties' rights under the oral contract. *Id.*

At the conclusion of a long discovery period, the parties cross-moved for summary judgment. ECF 35; 37. The record is replete with material disputes of fact that preclude summary judgment on most of the issues at the center of the litigation. But one issue related to all three claims does not involve a material dispute of fact, and on that issue Defendants are entitled to judgment as a matter of law. The Court will therefore grant in part and deny in part Defendants' motion for summary judgment and deny in whole Plaintiff's motion.[1]

---

[1] Based on the parties' briefing, the Court will resolve the motions on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

## BACKGROUND

Plaintiff, L.V. Nagle & Associates, is a small business that serves as a sales representative for suppliers. ECF 37-3, PgID 526. In that role, Plaintiff is essentially an intermediary between the suppliers and manufacturers. *Id.* Plaintiff would first introduce a supplier to a manufacturer. *Id.* After the initial introduction, Plaintiff would nurture the relationship by networking with the manufacturer on behalf of the supplier and serving as the manufacturer's point of contact at the supplier. *See, e.g.*, *id.* at 544; ECF 37-2, PgID 501; ECF 37-9, PgID 664; ECF 35-5, PgID 245, 248, 256. As the point of contact, Plaintiff would receive requests for quotes from a manufacturer, forward them to the supplier, and then forward the resulting supplier quote back to the manufacturer. *See generally* ECF 37-3; ECF 37-9. Plaintiff's involvement in the quotation process was on a surface level because Plaintiff did not participate in making calculations that went into a quotation. *Id.* at 544 ("[N]o one would let me quote jobs because I'd give the house away.").

Defendants, the Canadian company Tubular Steel and its American affiliates, were Plaintiff's clients. *See generally* ECF 37-3. Plaintiff served as their sales representative since the Canadian parent company's inception in the 1990s. *Id.* at 586.

The parties had an oral contract that they never memorialized in writing. *Id.* at 538. The parties now have disparate recollections of the oral contract's terms. According to Plaintiff, the contract "was very simple[:] three percent on all the accounts that I brought in." *Id.* at 536. Plaintiff understood the contract to mean that

for each account Plaintiff procured for Defendants, Plaintiff was assigned that account and entitled to three percent commission on all the account's sales. *Id.* at 537, 544. Plaintiff did not believe that the oral contract extended beyond the three percent commission structure for accounts assigned to Plaintiff. *Id.* at 537.

According to Defendants, the contract included not just a three percent commission on sales to customers that Plaintiff brought to Defendants, ECF 37-2, PgID 418, but also commissions of up to three percent on all sales to customers within the territory assigned to Plaintiff, even if Plaintiff did not procure the customers or participate in the particular sales, *id.* at 420. Defendants also recalled that the oral contract barred Plaintiff from any commissions after termination. *Id.* at 422, 442.

While the parties disagree about the extent of the oral contract, there is no dispute that Defendants had, from time to time during the relationship, granted Plaintiff exclusive territories and that Plaintiff was entitled to commissions on sales in those territories. *See* ECF 37-3, PgID 565. And in an internal email, Plaintiff had described the contract as more of a territorial than customer procurement agreement. ECF 37-15, PgID 783 ("My deal with Tubular dating back before 1996 is to sell ERW steel tube to Michigan, Ohio, Indiana, Kentucky, Tennessee, and anywhere else you can for three percent commission.") (cleaned up).

Defendants terminated their relationship with Plaintiff in May 2019. ECF 37-2, PgID 430; ECF 37-3, PgID 550. A few months before termination, Defendants had proposed lowering Plaintiff's commission on certain accounts to continue the business relationship. ECF 37-14. Plaintiff rejected the proposed contractual changes. ECF 37-

3

3, PgID 553. Plaintiff has since alleged that Defendants paid him the proposed lower commissions for his April 2019 work rather than the full commissions that he was owed under the contract. *Id.* at 568. Plaintiff further alleged that he is entitled to continuing post-termination commissions because he procured Defendants' customers and sales. ECF 32, PgID 132.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party may not simply rest on the pleadings; instead, they must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or a defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the

4

light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first discuss Plaintiff's breach of contract and declaratory relief claims related to continuing post-termination commissions. After, the Court will discuss Plaintiff's breach of contract and declaratory relief claims related to additional commissions for Plaintiff's April 2019 work. And last, the Court will discuss Plaintiff's claim under the Michigan Sales Representatives Commission Act.

While the parties did not explicitly discuss choice of law in their motions, they both only relied on Michigan law in their briefing. The Court will take the parties' reliance on Michigan law as an implicit stipulation to application of Michigan law to resolve the summary judgment motions.

I. Breach of Contract and Declaratory Relief Claims Related to Continuing Post-Termination Commissions

Michigan courts have long held that an "agent is entitled to recover his commission whether or not [h]e has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale." *Reed v. Kurdziel*, 352 Mich. 287, 294 (1958) (citations omitted). The ability of an agent to recover post-termination commissions for which he was the procuring cause has become known as the "procuring cause doctrine." Courts now restrict the procuring cause doctrine to contracts that are silent on post-termination commissions. *APJ Assocs., Inc. v. N. Am. Phillips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003).

5

Courts have also recently delineated two kinds of procuring cause cases: customer procurement cases and sales procurement cases. *Pfam, Inc. v. Indiana Tube Corp.*, No. 06-11015, 2006 WL 3313772, at *5 (E.D. Mich. Nov. 15, 2006) (Battani, J.). In a customer procurement case, an agent can "recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale." *Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir. 1992). In a sales procurement case, an agent can "recover a commission only on the specific sales that the agent procures," so "[s]ubsequent sales to the same customer that are not procured by the agent do not yield a commission." *Id.*

Courts look to "the contract between the agent and the principal" to determine "[w]hether an agent is entitled to commissions on a customer procurement or sales procurement basis." *Id.* (citations omitted). In other words, if the contractual language suggests that commissions are paid for customer procurement, then the customer procurement theory governs. If the contractual language suggests that commissions are paid for work on particular sales, then the sales procurement theory governs.

But when the contract bases commissions purely on the fact that a sale occurred in an agent's territory, neither procurement theory governs. *Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 850 (E.D. Mich. 1999) (Rosen, J.). Post-termination commissions are not owed for territory-based commission contracts. *Id.*

Because the parties' contract governs whether the procurement doctrine applies, and if so, whether the customer procurement theory or sales procurement

6

theory is the proper mode of analysis, the Court must analyze the parties' contract. Michigan courts interpret contracts according to their "plain and ordinary meaning." *Ajax Paving Indus., Inc. v. Vanopdenbosch Const. Co.*, 289 Mich. App. 639, 644 (2010) (citation omitted). If "the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms." *Id.* (citation omitted).

Here, the parties dispute the contract's terms. *Compare* ECF 37-3, PgID 536–37, *with* ECF 37-2, PgID 418–22. Plaintiff is adamant that the oral contract included terminology that tied his commissions to him procuring *customers* for Defendants. ECF 37-3, PgID 536–37. And Defendants are just as adamant that the oral contract called for Plaintiff to be paid commissions on not just accounts that Plaintiff procured but also on all accounts that were in his *territory*. ECF 37-2, PgID 418–22. Plus, Defendants are firm that the contract included an agreement that Plaintiff had no right to post-termination commissions, *id.* at 422, 442, whereas Plaintiff maintains that the contract did not include the terminology, ECF 37-3, PgID 537.

The dispute over the oral contract's terms is material because resolving the dispute could result in the dismissal of Plaintiff's claims, and the dispute is genuine because a reasonable jury could reach four distinct results. First, a factfinder could determine that the parties agreed Plaintiff had no right to post-termination commissions, and because the contract would then not be silent on post-termination commissions, Plaintiff's claims would fail. *APJ Assocs., Inc.*, 317 F.3d at 616. Second, if a factfinder determines that the contract was silent on post-termination

7

commissions, procurement based, and that Plaintiff procured specific customers, Plaintiff would be entitled to continuing post-termination commissions for those customers. Third, if a factfinder determines that the contract was silent on post-termination commissions and sales based, then the factfinder would have to decide whether Plaintiff was involved enough in the process of particular sales to receive commissions for those sales. *Fernandez v. Powerquest Boats, Inc.*, 798 F. Supp. 458, 462–63 (W.D. Mich. 1992) (McKeague, J.) ("[T]he Court concludes that plaintiff is entitled to post-termination commissions only for sales with respect to which his efforts, in the form of customer servicing or negotiations, were the procuring cause."); *Roberts Assocs., Inc. v. Blazer Int'l Corp.*, 741 F. Supp. 650, 653 (E.D. Mich. 1990) (Cohn, J.) ("[W]here the agent does not participate in the negotiation of a given contract of sale with a customer, he is not the procuring cause.") (citation omitted). And fourth, if a factfinder determines that the contract was territory based, Plaintiff's claims would fail. *Clark Bros. Sales Co.*, 77 F. Supp. 2d at 837.

Besides the procuring cause doctrine, Plaintiff also raised a "life of the part" claim to continuing post-termination commissions. ECF 32, PgID 130. A life of the part provision in a contract requires commissions to be paid after termination when an initial sale is made and the buyer "continue[s] to use the part in the manufacture of its [product] for many years." *Kingsley Assoc., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 502 n.5 (6th Cir. 1995). But life of the part claims must "rest upon evidence that the parties had expressly agreed to use [that] approach in calculating commissions." *Clark Bros. Sales Co.*, 77 F. Supp. 2d at 845 (collecting cases).

8

The evidence suggests that the parties did not expressly agree to a life of the part provision in the oral contract. Plaintiff stated routinely that the contract was simple and only required Defendants to pay Plaintiff three percent commissions on all sales for customers that Plaintiff procured. ECF 37-3, PgID 536–37. Plaintiff's internal email that relayed the terms of the oral contract also lacked any reference to a life of the part approach, ECF 37-15, as did an email that he sent to Defendants, ECF 37-5. And Defendants' President expressly stated that the oral contract did not include a life of the part provision. ECF 37-2, PgID 456.

But Plaintiff did testify that he was owed a three percent commission for the life of each part, ECF 37-3, PgID 563, and Plaintiff's post-deposition affidavit states that the oral contract included life of the part language. ECF 35-5, PgID 243. The record is clear that Plaintiff's references to life of the part came well after he defined the scope of the contract. All references to the oral contract by Plaintiff up to midway through the deposition cabin the contract to three percent commission for sales on customer accounts procured by Plaintiff. *See generally* ECF 37-15; ECF 37-5; ECF 37-3, PgID 521–62. Given that Plaintiff's own testimony and his emails contradicted his assertion that the oral contract included a life of the part provision, the Court cannot grant Plaintiff summary judgment under the life of the part theory.

Because the life of the part theory relates to the same breach of contract claim as the procuring cause doctrine theory, on which the Court cannot grant summary judgment to either party, the Court will not preclude Plaintiff from raising the life of the part theory again at trial. The Court simply will not grant summary judgment to

Plaintiff on the breach of contract claim based on the life of the part theory. Defendants' testimony and Plaintiff's own prior statements firmly rebut all evidence Plaintiff has put forward suggesting that the oral contract included the use of the life of the part approach. And the oral contract must have expressly referred to the approach. *Clark Bros. Sales Co.*, 77 F. Supp. 2d at 845 (collecting cases). If Plaintiff re-asserts the life of the part theory at trial, the jury will decide Plaintiff's credibility on the inclusion of the approach in the oral contract in the face of the many prior inconsistent statements detailed above.

In conclusion, the Court will not grant summary judgment to either party on the breach of contract and declaratory relief claims as they relate to continuing post-termination commissions because genuine material disputes of fact exist as to whether the procuring cause doctrine applies, and, if it does, which mode of analysis governs.

II.     Breach of Contract and Declaratory Relief Claims Related to April 2019 Work

There is no dispute that before termination, Plaintiff was owed three percent commission on many accounts and one percent commission on certain agreed-upon accounts. ECF 37-2, PgID 420; ECF 37-3, PgID 536–37. While Plaintiff insisted in his deposition that Defendants paid him a reduced commission for his April 2019 work for certain accounts based on Defendants' proposed contractual change, ECF 37-3, PgID 584, Plaintiff did not cite or otherwise reference any financial or accounting records that remotely suggest the commissions paid were in fact a reduced amount. Because Plaintiff, as the non-moving party, failed to present "specific facts showing

10

that there is a genuine issue for trial," the Court will grant summary judgment to Defendants and deny Plaintiff summary judgment on the breach of contract and declaratory relief claims as far as those claims relate to underpaid April 2019 commissions. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

III. <u>Michigan Sales Representatives Commission Act Claim</u>

Plaintiff also raised a claim under the Michigan Sales Representatives Commission Act. Under the Act, "a principal [must] pay a terminated sales representative all of the commissions due at the time of termination within forty-five days after termination, and [must] pay all commissions that become due after termination within forty-five days after such commissions become due." *Pfam, Inc.*, 2006 WL 3313772, at *3 (citing Mich. Comp. Laws § 600.2961(4)). The Act would therefore require payment of commissions that were otherwise due under one of the theories Plaintiff offered for his breach of contract and declaratory relief claims. Because a jury must determine factual issues about the continuing post-termination commission claims, the Court will deny both summary judgment motions on the Michigan Sales Representatives Commission Act claim as far as the claim relates to continuing post-termination commissions. And for the reasons explained above, the Court will grant summary judgment to Defendants on the claim as far as the claim relates to underpaid April 2019 commissions.

## CONCLUSION

11

All three of Plaintiff's claims therefore survive in part. And the claims all survive only to the extent that they allege continuing post-termination commissions.

With the summary judgment motions now resolved, the Court believes that the parties would benefit from intercession of a court-appointed mediator. The Court will therefore refer the parties to Mr. Patrick Seyferth for mediation.[2] The mediation must take place no later than September 21, 2022. The Court will set the final pretrial conference and trial dates in a later order.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [37] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [35] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Patrick Seyferth for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than September 21, 2022**. The parties must contact Mr. Seyferth and provide him with a copy of this order as soon as practicable and must **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth must **NOTIFY** the Court within seven days of completion of the mediation, "stating only the date of completion,

---

[2] Patrick Seyferth, an experienced federal mediator, is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court right after completing the mediation and must **SUBMIT** a proposed order of dismissal within twenty-one days. *Id*. at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within five days of the completion of the mediation.

    **SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: August 18, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 18, 2022, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager
