UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.V. NAGLE & ASSOCIATES, INC.,

          Plaintiff,

v.

TUBULAR STEEL, INC., et al.,

          Defendants.

_____/

Case No. 2:19-cv-11399

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING MOTION TO STRIKE [79]**

Five days before the scheduled trial date, Plaintiff sent Defendant an expert report prepared by Ms. Susan Koss, who Plaintiff identified as its damages expert. ECF 79-3. Two days later, Defendants moved to strike the expert report under Federal Rule of Civil Procedure 26. ECF 79. The Court ordered a response to the motion to strike, ECF 81, and Plaintiff complied, ECF 84. For the following reasons, the Court will grant the motion to strike.

**BACKGROUND**

Plaintiff sent Defendant a report outlining the opinion of Susan Koss in May 2021. ECF 74, PgID 1468; ECF 79, PgID 1846. The report was eleven pages long. ECF 64-2. It explained Ms. Koss's opinion of the amount of damages Defendants owed Plaintiff for actual and projected sales for twelve buyers of Defendants' products. *Id.* at 1366–69. To arrive at her opinion, Ms. Koss reviewed "two sources of sales information" and "various purchase orders, award letters, and other sales

1

documents." ECF 64-2, PgID 1365. The report did not identify the specific purchase orders, award letters, or sales documents that she reviewed. *See* ECF 64-2.

Then, five days before the scheduled start of trial, Plaintiff sent Defendant a second "supplemental" expert report outlining a new expert opinion of Ms. Koss. ECF 79-3. The new report was thirty-eight pages long. *See id.* And the report explained Ms. Koss's opinion of the amount of damages Defendants owed Plaintiff for actual and projected sales for twelve buyers, but its calculation of damages differed in several significant ways. *Compare* ECF 64-2, PgID 1369, *with* ECF 79-3, PgID 1890. For instance, the first report provided one bottom line number of damages: $5,098,347. *Id.* But the second report provided three numbers: $2,906,397, $6,421,538, and $10,238,075. *Id.* Likewise, the first report calculated damages by multiplying projected sales by Plaintiff's commission rate. *See* ECF 64-2, PgID 1366–69. But the second report used a different equation and calculated damages by multiplying the projected sales by the sum of Plaintiff's commission rate and the expected average inflation rate. *See* ECF 79-3, PgID 1886. What is more, to reach her opinion as expressed in the new report, Ms. Koss reviewed around seven hundred documents. *Id.* at 1895–1910. And unlike the first report, the new report identified the documents upon which she relied. *Id.*

## LEGAL STANDARD

Under Rule 26(a)(2), parties are required to disclose their expert witnesses and provide expert reports to the opposing parties by a date the Court orders. Absent a court order, the disclosures and reports must be made "at least [ninety] days before

2

the date set for trial." Fed. R. Civ. P. 26(a)(2)(D)(i). The reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming [the opinion]." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Throughout the discovery process, a party is required to supplement a report if it learns that the report is incomplete or incorrect. Fed. R. Civ. P. 26(a)(2)(E). "Any additions or changes" to the reports "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citation omitted).

"If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (alterations omitted). "[T]o assess whether a party's omitted or late disclosure is 'substantially justified' or 'harmless'" a district court must consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747, 748 (6th Cir. 2015). "The burden is on the potentially sanctioned party to prove harmlessness." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (citation omitted).

3

## DISCUSSION

The Court will grant the motion to strike because the second expert report is untimely. Moreover, admitting the report would not be harmless, and the untimeliness of the report is not substantially justified. To begin, the Court ordered the parties to submit "[a]ll Rule 26(a)(3) pretrial disclosures" by "one week before the pretrial conference." ECF 15, PgID 44. The Court held the pretrial conference on March 2, 2023. Thus, "any additions or changes" to the parties' expert reports were due no later than February 23, 2023. Fed. R. Civ. P. 26(e)(2). But Plaintiff did not disclose its damages expert's second report until March 9, 2023. *See* ECF 79-3. Thus, under Rule 37(c), the Court must exclude the second expert report unless it is (a) harmless, or (b) substantially justified.

I. <u>Harmless</u>

On balance, the second expert report would harm Defendants' presentation at trial. The Court will consider each of the five *Howe* factors in turn.

First, the second expert report is a surprise to Defendants. *See Howe*, 801 F.3d 747. Plaintiff sent Defendants an expert report detailing Koss's opinion on damages in February 2021. *See* ECF 64-2. Then, Plaintiff sent Defendants a substantially new expert report—which was nearly four times as long and relied on hundreds of extra documents—five days before the start of trial, two weeks late, and twenty-five months after sending the first expert report. *See* ECF 79-3. Plaintiff introduced an entirely new piece of evidence on the eve of trial and argued that it would not surprise Defendants because the new report analyzed only sales information and projections

4

that Defendants already had. ECF 84, PgID 2065. But it is illogical to say that a new expert report that uses a new formula to calculate damages, is based on a far wider array of documents, and substantially increases the size of the witness's opinion of Defendants' liability would not surprise Defendants. Thus, the first factor militates against a finding that the second report is harmless.

Second, Defendants cannot cure the surprise caused by the second expert report. *See Howe*, 801 F.3d 747. The Federal Rules of Civil Procedure require parties to disclose expert reports ninety days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i). And Rule 26 requires that "a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial." *R.C. Olmstead, Inc.*, 606 F.3d at 271 (cleaned up). Here, the second expert report is untimely, and Defendants do not have time to cure the surprise. There is no opportunity to depose Koss. And even if Defendants wished to introduce an expert or witness of their own to counter the new report, they could not. It is too late. Because Defendants cannot cure the surprise, the second factor weighs against a finding that the second expert report is harmless.

Third, the evidence presented in the new report would likely disrupt trial. *See Howe*, 801 F.3d 747. Indeed, Plaintiff did not even argue that the evidence would not cause disruption. *See* ECF 84. And Defendants argued that "Defendants [cannot] retain an expert at this late juncture to challenge Koss' entirely new expert report." ECF 79, PgID 1861. Plaintiff argued, in a different part of their response, that "Defendants chose not to retain their own damages expert or even depose Ms. Koss."

5

ECF 84, PgID 2054 (alterations omitted). But Defendants made those choices before they were ambushed with an entirely new expert report. If Plaintiff had timely produced the second expert report, Defendants might have made different strategy choices. Plaintiff has simply not proven that the trial will not be disrupted by the untimely production of the report. In all, because Plaintiff has not met its burden of showing that the second expert report would not disrupt trial, factor three cuts against a finding that the second expert report is harmless.

Factor four, the importance of the evidence, "cut[s] both ways." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019); *see Howe*, 801 F.3d 747. Plaintiff argued that "the Supplemental Report is essential to th[e] case as Defendants have not proffered any evidence about their actual sales and are not providing any expert testimony about their sales or [Plaintiff's] damages." ECF 84, PgID 2068. Plaintiff also contended that the second expert report is the "most reliable information that is available" on damages "because it has been derived from the third-party productions of the Customers." *Id.* And Defendants did not argue that the second report contained unimportant evidence. *See* ECF 79. Simply put, the second expert report is important because it is Plaintiff's primary method of proving damages. Yet because of its cruciality to the case, Defendants are greatly harmed by the late disclosure of the evidence. Indeed, "the more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220 (cleaned up). Thus, factor four "cut[s] both ways" and favors neither party. *Id.*

Last, factor five, Plaintiff's explanation for the late disclosure of the second expert report, cuts against admitting it. *See Howe*, 801 F.3d 747. Plaintiff did not explain why it disclosed the second expert report so close to trial.[1] *See* ECF 84, PgID 2064. And because "[t]he burden is on the potentially sanctioned party to prove harmlessness," *R.C. Olmstead, Inc.*, 606 F.3d at 272 (citation omitted), the Court cannot find that Plaintiff had a good explanation for its late disclosure. The fifth factor therefore weighs against admitting the second expert report.

In sum, because four of the five factors militate against a finding that the second expert report is harmless, the second expert report would not be harmless to Defendants.

II. Substantially Justified

Plaintiff alleged that its untimely disclosure of the second expert report is substantially justified because Defendants misbehaved during the discovery period. ECF 84, PgID 2060–65. The allegations are serious. Plaintiff alleged that Defendants: "intentionally falsified and withheld critical information within its possession"; "refused to produce [] actual sales number[s]" despite a Court order; and

---

[1] In its first response to the motion in limine to preclude Ms. Koss's first expert report, Plaintiff argued that it untimely submitted the second expert report because it did not receive the documents to write the second expert report until February 1, 2023. ECF 74, PgID 1471. But Plaintiff later submitted an amended response, ECF 77, which omitted that fact. And even if it were true that Plaintiff did not receive the necessary documents until February 1, 2023, that would not explain why it missed the February 23, 2023 deadline or why it did not immediately move for an extension of time to file a supplemental expert report. Even if the documents supporting the second expert report were not disclosed until February 1, 2023, long after they were due, that would still not excuse the untimeliness of the second expert report.

7

"intentionally provided inaccurate information in order to hide $19.9 million in sales." ECF 84, PgID 2055, 2058, 2064. If proven, Defendants' alleged behavior would likely violate Rule 11 of the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Michigan. The behavior might also constitute fraud and a violation of the Michigan Rules of Professional Conduct. But despite the alleged misconduct, and although the discovery period lasted from September 2019 to October 2021, Plaintiff filed no motion to compel discovery in the case. Nor did Plaintiff move for Rule 11 sanctions. Indeed, Plaintiff did not bring *any* of the specific alleged misconduct to the Court's attention until *after* the final pretrial conference. But that is too late. Plaintiff failed to bring any of the alleged misconduct to the Court's attention at a proper time and in a proper manner. And so, the alleged misconduct does not support or justify late filing of the report. The Court will not allow an untimely expert report into evidence based on untimely allegations that Defendants misbehaved during the discovery period, which opened forty-two months ago and has been closed for nearly eighteen months.

In all, the second expert report was untimely, the untimeliness was unjustified, and Defendants would be harmed if the report were nonetheless admitted. Thus, the Court will exclude the second expert report under Rule 37(c)(1).

8

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motion to strike the second expert report of Susan Koss [79] is **GRANTED**. Any prospective evidence to be offered from or based on the second export report will be excluded from trial.

**SO ORDERED.**

                                              s/ Stephen J. Murphy, III
                                              STEPHEN J. MURPHY, III
                                              United States District Judge

Dated: March 20, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 20, 2023, by electronic and/or ordinary mail.

                                              s/ David P. Parker
                                              Case Manager